UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

SHAWNEY M.,[1]                                                                        6:17-cv-1005-JR

                                        Plaintiff,
                                                                                      ORDER

            v.

NANCY A. BERRYHILL,
Deputy Commissioner of Social Security,

                                        Defendant.

RUSSO, Magistrate Judge:

        Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision

denying plaintiff's application for supplemental security income benefits (SSI).

        Plaintiff asserts disability beginning September 10, 2005 due to bipolar disorder with

psychosis. Tr. 157, 171. Plaintiff was 14 years old on her alleged onset date. Tr. 157.

---

        [1]In the interest of privacy, this order uses only the first name and the initial of the last
name of the non-governmental party or parties in this case. Where applicable, this order uses the
same designation for a non-governmental party's immediate family member.

Page 1 - ORDER

After a hearing held on October 19, 2015, an administrative law judge (ALJ) determined plaintiff was not disabled. Plaintiff asserts the ALJ erred by: (1) improperly discrediting her testimony; (2) improperly rejecting the opinion consulting psychological examiner Dr. Scott Alvord; and (3) improperly discrediting her great-grandmother's third-party statement.

A.    Plaintiff's Credibility

In her application for SSI, plaintiff asserted her mental state is such that she is unable to work because she "can't sit still," her "attention span is that of a child," and she "can't remember things." Tr. 180. Plaintiff further asserted she never had a job and does not "even have the concept of being employed." Id.

Plaintiff has a sparse medical history, but records indicate a suicide attempt in January 2010 following a breakup with her then boyfriend. Tr. 588.[2] Plaintiff suffered a manic episode with psychosis in March 2013. Tr. 339. She had not been taking her prescribed medications for several years prior to the episode. Id. At the hearing plaintiff testified the medication, Depakote, "makes me to where I don't go into psychosis  and it stabilizes my moods." Tr. 53. Plaintiff further testified that when she stops taking Depakote her symptoms quickly worsen. Tr. 54.

Nonetheless, plaintiff stated she is still unable to work when taking Depakote because she gets discouraged and suffers from paranoia. Tr. 55. Plaintiff testified she could "not take on too much work so that it wouldn't become stressful." Tr. 58. Plaintiff stated she unable to handle even slow paced jobs full-time because there are days she doesn't "feel like doing anything at all." Tr. 61.

---

[2]The chart note also indicates a suicide attempt in November 2005. Tr. 589. However, the note indicates no further documented history of significant medical problems. Id.

Plaintiff also relates that she has panic attacks once a month that are relieved by smoking marijuana. Tr. 65-66.

The ALJ found plaintiff not credible concerning the limiting effects of her disorder. Tr. 23. The ALJ first noted there is no basis for plaintiff's alleged onset date of September 2005 because there are no medical records even remotely close to this date. Tr. 23. While the medical records are indeed sparse with little in the way of documented history of significant medical problems, the medical record does document two suicide attempts in November 2005[3] and January 2010. Tr. 588-89.

The ALJ also noted plaintiff did not seek mental health treatment until March 2013. However, plaintiff was a minor for much of the period of alleged disability and, as noted, it is unclear what medical records may exist and to what extent plaintiff controlled her medical treatment. In addition, plaintiff alluded to an inability to afford treatment until recently. Tr. 54 (times when unable to afford medication); 55 ("On Oregon Health now ... so no reason not to take Depakote"). Because the record is unclear, it cannot be determined if the ALJ appropriately made an adverse credibility determination based on failure to seek medical treatment. See Orn v. Astrue, 495 F.3d 625, 638 9th Cir. 2007) (A failure to seek treatment may be the basis for an adverse credibility finding unless there is good reason for the failure such as lack of funds.).

---

[3]The Commissioner asserts there are no contemporaneous medical records of the November 2005 suicide attempt. The Commissioner also asserts the November 2005 attempt does not explain disability going back to September 2005. The record does not indicate what condition prompted plaintiff to attempt suicide in 2005 and whether she had been suffering from such condition since September of that year. Moreover, plaintiff was about 15 years old at the time and it is unclear from the record what control she had over her own medical treatment. It should be noted that a February 11, 2014 chart note mentions "Records indicate an overdose of Tylenol at age 15," and thus it is unclear if further pediatric medical records do exist. Tr. 426

The ALJ next notes that despite plaintiff's alleged inability to work, plaintiff expressed an interest in working, applied for full-time work, attended interviews, and performed some "under-the-table work." Tr. 23. Plaintiff did express interest in work. E.g., Tr. 309 (expressed interest in starting to work). Plaintiff also applied for work and attended interviews. E.g., Tr. 358 (applications and interviews at Dairy Queen and Subway). Plaintiff also engaged in sporadic under-the-table work activity. Tr. 23, 52, 555. However, this does not discredit plaintiff's alleged inability to maintain work due to stress. The ALJ also indicates that plaintiff may actually lack motivation to work or is unable to obtain a job due to inexperience and a criminal history rather than disability. Tr. 23-24. The ALJ does cite record support for plaintiff's criminal history. Tr. 300 (incarcerated off and on between the ages of 15-17 for assault and drug related offenses); Tr 318 (charges of disorderly conduct at age 22). However, the ALJ does not cite record support for employment rejection due to inexperience or due to a criminal record. Moreover, the record indicates criminal mischief is a concern relating to plaintiff's bipolar condition. Tr. 339.

The ALJ also noted plaintiff's lack of mental health counseling and the effectiveness of her medication in stabilizing her symptoms. Tr. 24. While the record does indicate medication effectively prevented severe psychotic episodes and stabilized her mood, plaintiff testified that she still suffers from paranoia, is unable to handle the stress of "too much work," and suffers from panic attacks. Tr. 55, 58, 65. The record is unclear as to plaintiff's lack of counseling as plaintiff stated, "I've had counseling all my life so it's basically you start to hear the same things over and over again." Tr. 65. The record is ambiguous as to whether plaintiff's medication controls her bipolar

Page 4 - ORDER

condition sufficiently to enable her to work.[4]  There is also ambiguity as to whether plaintiff is

unable to work due to her disorder, or her lack of motivation, or other factors not related to her

disorder.  Therefore, it cannot be determined if the ALJ's findings are supported by substantial

evidence.

The ALJ next notes that despite allegations of disability, plaintiff obtained her GED, attended

community college, and had the stamina to play video games.  Tr. 25.  However, it is unclear how

obtaining a GED or playing video games translates to an ability to work or otherwise discredits

plaintiff's asserted inability to work full-time.  In addition, while the record indicates plaintiff

"passed some of her first exams" of cosmetology school,  she stopped going because she was "too

overwhelmed."  Tr. 418,  67.[5]  Again, the ALJ's findings are not supported by substantial evidence

based on the current record.  Accordingly, a remand is necessary to address the ambiguity concerning

plaintiff's credibility.

B.       Dr. Scott Alvord

Dr. Alvord examined plaintiff on September 15, 2015.  Tr. 554.  Dr. Alvord diagnosed

plaintiff with chronic bipolar disorder and post-traumatic stress disorder.  Tr. 558.  He opined

---

[4]The ALJ also determined plaintiff inconsistently reported to Dr. Alvord her non-compliance with medications due to intolerable side-effects.  Tr. 25, 555.  However, plaintiff testified at the hearing and to providers about the relative effectiveness of Depakote. She reported to Dr. Alvord the intolerable side-effects from Lithium, Welbutrin, Zoloft, Prozac, and Paxil and thus she discontinued those medications.  Tr. 53, 379, 555.  At the hearing, plaintiff testified she stopped taking Latuda because it made her feel like she has to "jerk," consistent with her statement to Dr. Alvord.  Tr. 53, 555.

[5]The record is unclear if plaintiff could complete a narrowed course of study in cosmetology school and obtain employment in that narrowed discipline.  See Tr. 58 (going for all three disciplines (hair, esthetics, and facials) was too fast-paced); Tr. 67-68 (quit because overwhelmed after deciding to do all three disciplines for licensing purposes).

plaintiff would have difficulty: performing detailed and complex tasks; accepting instructions from supervisors; interacting with co-workers and the public; performing work activities on a consistent basis without special accommodations; maintaining regular attendance in the workplace; completing a normal workday/workweek without interruption from her psychiatric condition; and dealing with the usual stress encountered in the workplace.  Tr. 558.

The ALJ gave little wight to Dr. Alvord's opinion finding it was based on a limited review of the medical evidence and was inconsistent with the record as a whole.  Tr. 26.  To the extent the the ALJ relies on his finding that the effectiveness of plaintiff's medications belie the assertion that plaintiff cannot work full-time; the record, as noted above, is ambiguous on this point.

The ALJ ultimately concluded that Dr. Alvord's opinion was based on plaintiff's less than credible reports.  Tr. 26.  However, as noted above, the record needs further development regarding plaintiff's credibility.  Moreover, as the Ninth Circuit has noted:

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. See Poulin, 817 F.2d at 873 ("[U]nlike a broken arm, a mind cannot be x-rayed.").Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017).

Accordingly, a remand is necessary to address Dr. Alvord's opinion along with plaintiff's credibility.

C.      Third-Party Statement of Plaintiff's Great-Grandmother

Plaintiff lives with her great-grandmother Pearl M. who reported on the limitations imposed by plaintiff's mental condition.  Tr. 202-09.  The ALJ stated Pearl M's report "generally mirrored

the claimant's reports of pain, limitations, and activities of daily living." Tr. 23. The ALJ gave little weight to the report stating: "Due to her relationship with and affection for the claimant, she is understandably sympathetic to the claimant and has a natural tendency to agree with her reported limitations." Tr. 23. The Commissioner concedes that it is improper for the ALJ to reject a family member's report because of a sympathetic relationship to the claimant. Nonetheless, the Commissioner argues the court can infer that the ALJ rejected the report for the same reasons he rejected plaintiff's similar subjective report. To the extent the court could infer such a finding on the part of the ALJ, the record needs further development regarding plaintiff's credibility as noted above. Accordingly, a remand is necessary to address Pearl M's report as well.

D.    Remand

Plaintiff argues the court should remand for payment of benefits. The court declines to do so. Although the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony, Dr. Alvord's opinion, and Pearl M's report, the record requires further development before a finding of disability can be made. Because a remand for further proceedings is necessary, a remand for payment of benefits is not warranted. See Treichler v. Comm'r of SSA, 775 F.3d 1090, 1105 (9th Cir. 2014) (Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.).

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed

and remanded for further proceedings.


DATED this 12th day of October 2018.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge